Corson v. Lewis.

WILL A. CORSON V. MARY LEWIS ET AL.*

FILED NOVEMBER 10, 1906.   No. 14,006.

1. **Attorney and Client: CONTRACT: ASSIGNMENT.** A contract for legal
   services is personal in its nature and cannot be assigned by one
   party without the consent of the other.
2. ———: ———: **ANNULMENT.** Death or disability, which renders
   the performance of such a contract impossible, annuls the con-
   tract.

ERROR to the district court for Douglas county: WIL-
LIAM A. REDICK, JUDGE.   *Affirmed.*

*Will A. Corson* and *Cooper & Dunn,* for plaintiff in
error.

*John L. Webster, contra.*

OLDHAM, C.

On May 14, 1900, Mary Lewis instituted an action in
the district court for Douglas county, Nebraska, against
the Omaha Street Railway Company to recover damages
for personal injuries.   The suit was filed by Will A. Cor-
son, an attorney of Douglas county, and the proposed in-
tervener in this cause of action.   After the suit was filed
a demurrer was interposed to the petition by the street
railway company and was sustained by the district court.
Mr. Corson then employed George W. Cooper, Esq., to
assist in the prosecution of the case, and on January 16,
1901, an amended petition was filed, and issues were
joined thereon.   While the cause was pending, negotia-
tions for a settlement of the claim were had between Mr.
Corson, as attorney for the plaintiff, and Honorable John
L. Webster, as attorney for the defendant.   While these
negotiations were pending, in April, 1902, Mr. Corson be-
came temporarily mentally deranged from nervous pros-

*Rehearing allowed.   See opinion, p. 449, *post.*

tration, and was placed in a private sanitarium for treatment, and was treated at different sanitariums without the state until August, 1903, when his health was restored and he returned again to Omaha and reengaged in the practice of his profession. During the time Mr. Corson was receiving treatment his office was closed, and all his books and papers were removed to his residence within the city. Before instituting the suit for Mrs. Lewis, Mr. Corson had entered into a written contract with her husband, who assumed to act as her agent, by the terms of which Mr. Corson was to receive one-half the money procured on the claim either by compromise or judgment, and plaintiff was to pay the costs of litigation. When Mr. Corson was taken away for treatment, Mr. Cooper went to the court in which the cause was pending, and had his name entered as of counsel for the plaintiff, and procured a continuance of the case on account of the absence of Mr. Corson who was the managing counsel. In the meantime Mr. Howe G. Corson, brother of the proposed intervener, requested John W. Parrish, Esq., to look after whatever legal business had been in the hands of his brother, and on October 30, 1902, Mr. Parrish, acting alone and on this suggestion, and without any conference or communication with Mr. Will A. Corson, as appears from his testimony, filed in the cause then pending a notice of attorney's lien, as follows: "To the Omaha Street Railway Company, and all other persons concerned: Notice is hereby given that W. A. Corson, attorney for plaintiff in the above entitled action, claims a lien herein for one-half (½) of the amount of whatever judgment is recovered and entered in this suit. W. A. Corson, Atty. for Plff., by John W. Parrish, his agent and attorney."

In September, 1902, and about five months after Mr. Corson's illness began, Mrs. Lewis, being wholly unable, as she said, to confer with her attorney, and having learned that his office was closed and that he was in an asylum for treatment, communicated through Mr. Neary with T. J. Mahoney, Esq., and requested him to enter into

the prosecution of her suit and conduct it to judgment or final settlement. Mr. Mahoney, knowing the condition of Mr. Corson's health and believing that he was permanently disabled from practicing his profession, called upon Mr. Cooper, who had been making an unsuccessful effort to find the office files in the case, and the list of witnesses that Mr. Corson had in his possession, and to get ready to try the case, if necessary, to save it from being dismissed, and Mr. Cooper turned the matter over so far as he was concerned to Mr. Mahoney. Mr. Mahoney also called upon Mr. Parrish to inquire if he had any connection with the case, and Mr. Parrish explained that he had none, and that all he had done was to file a notice of a lien for Mr. Corson, as above set out. Mr. Mahoney thereupon proceeded to effect a settlement of the cause, and compromised the claim for $1,200, and in conformity with the stipulation between the parties the cause was dismissed on the 3d day of February, 1903. Mr. Mahoney settled with Mr. Cooper for the services he had rendered, paying him $100 therefor and taking a receipt for his claim for services rendered. At the second term of court after the judgment of dismissal was entered, Will A. Corson filed a motion to set aside the judgment, as having been entered into collusively and in fraud of his rights to an attorney's lien on the money received on the compromise, and also asked leave to file an intervening petition for the determination and enforcement of his lien. His application was tried on affidavits and counter-affidavits, and the motion was overruled and leave to file an intervening petition was denied by the district court. To reverse this judgment the proposed intervener brings error to this court.

It is only fair to the professional standing of all the attorneys involved in this controversy to say that there is not a syllable of testimony in the record that even remotely tends to show any collusion or fraud on the part of any of them in procuring a settlement of the claim.

They each appear to have acted with professional courtesy and strict integrity in the matter.

It is a principle universally recognized in the courts that a contract for legal services is personal in its nature, and consequently unassignable, and that death or disability, which renders performance impossible, discharges the contract. Now, there is no dispute in the record as to the fact that Mr. Corson, before either procuring a judgment or settlement of the claim, was unfortunately disabled by disease from performing his duties as plaintiff's attorney, and as he was without authority to assign his contract to anyone else, the contract was annulled, and Mrs. Lewis was fully justified in procuring other counsel to protect her interests in the suit. As there is no valid claim for services existing in favor of the proposed intervener and against his client, no lien could attach to any money received in settlement of the claim. In this view of the matter it is unnecessary to express any opinion on the other questions discussed in the briefs. We therefore recommend that the judgment of the district court be affirmed.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed December 18, 1907. *Former judgment of affirmance, as modified, adhered to:*

1. **Attorney and Client: DISABILITY: ACTION.** If the party to an entire contract for personal services, who is to render the service, becomes, by reason of physical disability, through no fault of his own, unable to perform the same, the contract is discharged, but he may recover the reasonable value of his services rendered upon a *quantum meruit.*

2. **Attorney's Lien.** An attorney may have a lien upon the claim of his client in an action for personal injury.

32

3. **Intervention After Dismissal.** Where a settlement has been made between the parties to an action and the action dismissed after notice of an attorney's lien has been given, the attorney may, in a proper case, move to set aside the judgment of dismissal and be allowed to intervene as a party plaintiff to establish his lien.

4. ———: Review. Under the facts set forth in the opinion, *held* that the order of the district court refusing to set aside the order of dismissal and to allow a hearing upon a petition in intervention was not erroneous.

5. **Former opinion** adhered to, save as modified by paragraph one of the syllabus.

LETTON, J.

This is an action for personal injuries. A contract was made by the plaintiff, Lewis, with the intervener, Corson, for legal services. The case was settled by the parties and judgment of dismissal was entered. Corson now seeks to reopen the case to establish an attorney's lien which he asserts against the defendant. A full and detailed statement of the facts in the case may be found in the former opinion by Mr. Commissioner OLDHAM, *ante,* p. 446.

In the former opinion the principles are laid down that a contract for legal services is personal in its nature, and consequently not assignable, and that death or a disability, which renders performance impossible, discharges the contract; that therefore, since Corson, before procuring a judgment or settlement of the case, was disabled by disease from performing his duties as attorney for plaintiff, the contract was annulled; that he had no valid claim for services performed against his client and therefore no lien could attach. We have no fault to find with the holding that a contract for legal services is personal in its nature and nonassignable, or that disability discharges such a contract. We think, however, that, if a disability occurs after a special contract for services has been partly performed, this does not prevent the disabled party, if the breach of the contract was made through no fault of his own, but by the act of God or unavoidable casualty,

from recovering upon a *quantum meruit* for the reasonable value of the services rendered prior to the disability. This is the more modern rule, and we think is founded upon right and justice. *Coe v. Smith,* 4 Ind. 79, 58 Am. Dec. 618; *Parker v. Macomber,* 17 R. I. 674, 16 L. R. A. 858, and note; *Johnston v. Board of Commissioners,* 78 Pac. (N. M.) 43. This court has gone even further. In *Murphy v. Sampson,* 2 Neb. (Unof.) 297, it was held that, when services were rendered under a contract, a party breaking the same may recover the value of the services rendered before the breach, less such damages as the employer may have sustained by reason of the breach.

It is contended that the lien which was filed was not sufficiently specific or particular to give the defendant notice that the lien was claimed upon anything but a judgment which might be rendered. The notice was that the attorney claimed a lien for one-half of "whatever judgment is recovered," and it is said, since no judgment was recovered, no lien can be asserted. We think this is carrying refinement to excess. The object of the notice was to give the defendant knowledge that the attorney claimed one-half of any money which the plaintiff was entitled to recover from the defendant upon the cause of action, as a recompense for his services as attorney. As a matter of fact, the notice proved effectual to do this, because the record shows that Mr. Webster, the attorney for the defendant, spoke to Mr. Parrish, who had acted for Corson in the filing of Corson's lien, of the existence of Corson's claim, and to Mr. Mahoney, who succeeded Corson as attorney for Mrs. Lewis. We do not think that the law contemplates that parties can come together and settle pending actions in such a way as to deprive an attorney of his right to compensation, when both know that he makes such a claim and has given notice of it. *Cones v. Brooks,* 60 Neb. 698.

It is objected, further, that the lien was not filed until after Corson had ceased to be the attorney for Mrs. Lewis, and after Mr. Mahoney had been employed. It is suffi-

cient to say it was filed before the settlement and in sufficient time for the attorney for the defendant to ascertain its existence. It is said that the filing of the notice of the lien was not authorized, and that, since the settlement was consummated before its ratification, it cannot affect the parties. Under the circumstances any act which was taken by Mr. Corson's friends or relatives in his behalf, which was afterwards ratified by him, is as effectual as if it had originally been performed by himself or by his express direction. As soon as he learned of Mr. Parrish's act in filing the lien, which was soon after his return to the state, he approved the action, and in seeking to avail himself of any benefits which its filing may confer upon him he again ratifies and adopts Parrish's act as his own and his ratification relates back to the original time of filing. It is claimed that Corson has no standing in court without Mrs. Lewis having been brought in and made a party to his petition in intervention; that in no event could he recover from the defendant more than Mrs. Lewis might be indebted to him, and that in the ascertainment of that amount Mrs. Lewis is a necessary party. In answer to this, it is said Mrs. Lewis is insolvent, and that, since whatever sum might be recovered by him for his services against her must necessarily be paid by the defendant, the street railway company is the only real party in interest, and the value of the services can as well be ascertained without her as if she were a party to the proceeding. This is the view taken by the supreme court of Kansas in *Kansas P. R. Co. v. Mihlman*, 17 Kan. 224, and seems a sufficient answer to the argument.

It is strongly contended that the action being one not arising out of contract, but to recover damages for a personal injury, and the claim not having been reduced to judgment, the right to a lien does not exist. We are aware that many courts are committed to the doctrine that parties to suits for personal injuries may settle or compromise such actions between themselves without reference to whether services have been rendered to the plaintiff by at-

torneys, for which no compensation has been given, and regardless of whether a contract for fees based upon the amount of recovery exists, and notice has been given to the defendant of a claim under such contract. Some of these decisions are based upon the common law doctrine of the nonassignability of causes of action for injuries to the person, and others upon the language of the particular statute under which the charging lien is claimed. Among these cases are *Weller v. Jersey City, H. & P. Street R. Co.*, 66 N. J. Eq. 11, 57 Atl. 730; *Randall v. Van Wagenen*, 115 N. Y. 527; *North Chicago Street R. Co. v. Ackley*, 171 Ill. 100; *Anderson v. Itasca Lumber Co.*, 86 Minn. 480. In the last mentioned case, the supreme court of Minnesota held, under a statute the same as that of Nebraska, that a statutory lien would not apply in such a case as this prior to the rendition of a judgment and the ascertainment thereby that there actually was "money in the hands of the adverse party belonging to his client." This case sought to distinguish the case of *Smith & Baylies v. Chicago, R. I. & P. R. Co.*, 56 Ia. 720, on the ground that in that case a judgment had actually been rendered against the defendant; but this seems to be an error, the judgment mentioned in the opinion being one against the client for the amount of the fee charged. The language of the opinion of the Iowa court indicates that the settlement between the parties was made before judgment. This case holds that, under a statute like ours, an attorney may assert a statutory lien in an action for injuries to the person. In an opinion by Judge Brewer, under a statute which reads: "An attorney has a lien for a general balance of compensation * * * upon any money due to his client, and in the hands of the adverse party, in an action or proceeding in which the attorney was employed, from the time of giving notice of the lien to that party"—it was held in a personal injury case where notice of a lien was given and before final judgment, there having been a settlement of the case and a dismissal, that the attorney may maintain a separate action to recover the amount due

on the lien and his client is not a necessary party to such action. *Kansas P. R. Co. v. Thacher,* 17 Kan. 92. In *Abbott v. Abbott,* 18 Neb. 503, this court held that an attorney's lien could not be had under our statute before judgment in a cause of action for a personal tort which abates by death; the reason evidently being that, since such a right of action was nonassignable at common law, no claim could be made to a part of it by agreement of the parties. But as our statute provides that pending actions in cases of the nature of the present one do not abate by death, the holding of that case does not bind us in this. We prefer to follow the courts of Kansas and Iowa in holding that in a pending cause of this nature notice of an attorney's lien properly given binds the defendant so that a settlement between the parties and payment, before judgment, will not operate to defeat the attorney's right.

The point in the case which has given us the most difficulty is one which is, to some extent, discussed in the original brief of the defendant. It appears that after Mr. Mahoney took charge of the case for Mrs. Lewis and negotiations of settlement were pending between Mr. Webster and him, Webster stated to Mahoney that Mr. Cooper claimed some interest in the case, and that Mr. Parrish also claimed to represent Mr. Corson, and that he, Webster, wished to have a final and complete settlement so that all the parties would be satisfied. Mr. Webster also, on two occasions, spoke to Mr. Parrish on the street regarding the case, and mentioned the fact to him that Mr. Mahoney now appeared for the plaintiff, and suggested that if Mr. Parrish claimed any interest in the case for Mr. Corson he had best confer with Mr. Mahoney about it before the settlement should be completed. As to these facts there is no conflict in the testimony. Mr. Parrish testified that he, on one or two occasions, had some conversation with Mr. Webster regarding the case, or a possible settlement thereof, and was advised by Mr. Webster that Mr. Mahoney claimed to represent Mrs. Lewis, and that he was endeavoring to negotiate a settlement, and

suggested to Parrish to confer with Mr. Mahoney about the matter; that he did not do so, but that he did talk with Mr. Cooper of the talk he had with Mr. Webster. Under this state of facts, where the attorney for the street railway company used every effort to apprise all of the parties concerned as attorneys in the case, or who had been thus concerned, of the fact that a settlement was about to be made and of his desire to make a final and complete settlement, and after he had spoken to the attorney who had acted for Mr. Corson in the filing of the notice of the lien, and who Corson states in his brief, and testifies, was authorized to file the lien, and also duly authorized to carry on or settle the case, and who was apparently the only person besides Mr. Cooper who was interested in the case or who had apparent authority to act for Mr. Corson, and suggested a conference with Mr. Mahoney, the then attorney for the plaintiff, we think it would be unjust and improper to hold the defendant liable because of its settlement of the case after having in good faith done everything in its power to advise and notify all parties concerned. If either Mr. Cooper or Mr. Parrish had notified Mr. Webster that Corson still claimed an interest in the matter, or that if he, Webster, settled the case it would be at his client's peril, the defendant would not have been placed in the position in which it now is. We think that Mr. Webster had a right to rely upon the fact that neither Mr. Cooper, who had been associated with the intervener in the conduct of plaintiff's cause, nor Mr. Parrish, who had acted for intervener as agent or attorney in the filing of the lien and who had authority to settle the case, desired to assert, or did assert, any claim of any kind in behalf of Mr. Corson, and was justified in believing that, since no claim was made, it was intended to waive it as against the defendant. Taking this view of the case, while we adhere to the legal principles stated in the former opinion and in the syllabus that death or disability, which renders the performance of a contract for legal services impossible, annuls the contract, and while we are of the opinion that

in such case the disabled party may recover the value of the services actually performed under the contract upon a *quantum meruit,* still we think that the defendant was justified in settling the case, under the circumstances, and that the intervener is estopped by the failure of his agent to assert himself in regard to the matter. The intervener cannot accept the benefit of Parrish's actions so far as they are beneficial to him, and disaffirm his acts or omissions in so far as they operate to his detriment.

The opinion in the former case is adhered to, as modified by the foregoing.

AFFIRMED.