ANDREW ROSSETTI *v*. CITY OF NEW BRITAIN

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and MACDONALD, Js.

Argued April 5—decided June 14, 1972

*George J. Coyle,* for the appellant-appellee (defendant).

*Herbert Watstein,* with whom, on the brief, was *Julius Watstein,* for the appellee-appellant (plaintiff).

RYAN, J.  In the first count of the complaint the plaintiff sought recovery from the defendant for breach of contract for architectural services rendered.  In the second count, he alleged that the firm of which he was a partner was hired by the defendant city to perform architectural services in connection with a new police station and Circuit Court quarters; that after a great deal of work and service had been performed the defendant terminated the services of the firm by hiring new architects for the project; that the plaintiff now owns all the assets of the partnership and that he has not been paid for the work.  He sought damages in quantum meruit for the work and services rendered to the defendant.  On the trial of the case to the jury, the trial court directed a verdict for the defendant on the first count.  The jury returned a verdict for the plaintiff on the second count in the sum of $12,300.  From the judgment rendered on the second count the defendant has appealed to this court and the plaintiff filed a cross appeal claiming error in the action of the trial court in directing a verdict for the defendant on the first count.

Three of the defendant's assignments of error are directed to the charge.  The claims of error ad-

dressed to the charge are to be tested by the claims of proof as they appear in the finding. Practice Book § 635; *Intelisano* v. *Greenwell,* 155 Conn. 436, 444, 232 A.2d 490; *Morgillo* v. *Evergreen Cemetery Assn.,* 152 Conn. 169, 177, 205 A.2d 368. The defendant's claims of proof were attacked in the plaintiff's assignments of error on the ground that they are not supported by the evidence. The defendant filed no appendix to support those attacked and they are not supported in the evidence printed in the plaintiff's appendix. As a consequence they cannot be considered. The defendant's remaining claims of proof recite the following: On August 21, 1957, the common council of the city of New Britain by resolution authorized a newly-formed building committee for a new police station to engage an architect under the terms and rates of the so-called Blue Book to design a new police station for the defendant city and to prepare the necessary plans and specifications for it. The resolution further specified that the board of finance and taxation of the city should provide the necessary funds. It was approved by the mayor on August 23, 1957. The building committee, pursuant to the resolution, chose the firm of Rossetti, DiCorcia and Mileto, a partnership, to design the proposed new police station, and to prepare the necessary plans and specifications for it. It was understood by everyone concerned that the new police station was to be planned, financed and built under the terms of No. 343 of the Special Acts of 1957. The common council approved the building committee's selection of the architectural firm of Rossetti, DiCorcia and Mileto.

The plaintiff made the following claims of proof: The police building committee held its organization meeting on June 10, 1957. The function of this com-

mittee was to construct a new police station and Circuit Court building. At the organizational meeting the mayor reported the passage by the legislature of a special act authorizing a bond issue in the sum of $750,000. The committee unanimously chose a site at Main and East Main Streets for the proposed building. This was agreed on by the mayor and the redevelopment commission. In 1954 the plaintiff, Andrew Rossetti, associated with Philip DiCorcia in a partnership, and, in January, 1956, William Mileto joined this partnership. DiCorcia remained as a partner until December 31, 1957, and Mileto remained as a partner until December, 1960. Andrew Rossetti, either as a member of his firm or individually, had performed architectural services on numerous public buildings. The New Britain common council, by resolution approved August 23, 1957, by the mayor, authorized the committee to hire an architect to prepare plans and specifications for the new police station and courthouse. The resolution also provided that the architect so engaged would be paid at the standard rates established by the Blue Book and as set forth by architects. The common council expected the architect to be so paid. The common council on that day voted that the board of finance and taxation provide the necessary funds. On November 12, 1957, the board of finance and taxation approved an expenditure for a sum up to $750,000 for the construction and equipment of the new building. It recommended to the common council the appropriation and issuance of bonds under No. 343 of the Special Acts of 1957. This was approved by the mayor on November 22, 1957, and by the common council and the mayor on January 27, 1958. The committee then hired the firm of the plaintiff, Rossetti, DiCorcia and Mileto, as the archi-

tects to draw sketches and plans for the new building and intended to pay for these services. Prior to July 25, 1957, Rossetti was notified by a telephone call from the mayor's office that his firm was awarded the architectural contract for the building. His firm was engaged as architect at standard rates established by the Blue Book to prepare plans and specifications and the firm expected to be paid for their services. The plaintiff was informed that the site was to be the corner of Main and East Main Streets in the city of New Britain. After August 9, 1957, Rossetti's firm began working on the development of preliminary plans. On September 16, 1957, a meeting was held with the building committee. Rossetti's firm was asked to develop these plans into a preliminary working drawing and this was done. By December, 1957, the set of preliminary and basic working drawings for this project was completed. All architectural work and other work was done before December 31, 1957. After a preliminary estimate of $661,000 in connection with this project the plaintiff Rossetti prepared and developed a contemplated cost estimate in the amount of $700,000. The approximate cost of using Rossetti's plans including architectural fees was $750,000. By December 31, 1957, Rossetti's firm had completed 30 percent of the project and the blueprints were turned over to the chairman of the committee. The plaintiff, Andrew Rossetti, was at all times in charge of this project to build a new courthouse and police station. Prior to the partnership dissolution on December 31, 1957, when the plaintiff Rossetti and Mileto took over from DiCorcia, Rossetti had given notice of this change during the latter part of November, 1957, to the chairman of the building committee and no objection was made. Neither Rossetti nor his firm

ever received a letter from the building committee or from the city of New Britain informing them that the project was abandoned. When DiCorcia left the partnership on December 31, 1957, all draftsmen, officers, secretaries' desks, books, supplies and records remained at the firm office in Bristol. On December 31, 1957, the firm of Rossetti, DiCorcia and Mileto was dissolved and a new partnership was formed in the name of Rossetti and Mileto. When DiCorcia left the partnership he agreed that the business should belong to and be carried on by Rossetti and Mileto as continuing partners and that all assets, good will and accounts receivable would be assigned to the continuing partners, Rossetti and Mileto. This was done. On April 12, 1963, Rossetti wrote to the chairman of the police board and advised him that a great deal of preliminary planning work had been completed and offered to complete the planning of the new facility for the city of New Britain. He also informed the mayor of the city and offered to complete the work. The services of the plaintiff's firm were accepted by the defendant. Expert testimony was offered that if the project cost was $700,000, $12,800 would be a fair fee based on 30 percent of the work. Testimony was also offered on the basis of 30 percent of the services being completed that the reasonable value of these services done by the plaintiff's firm based on a cost of $661,000 would amount to $12,300.

The defendant noted an exception to the charge of the trial court as follows: "I noted that in your charge you failed to mention the legal consequences of a party putting himself into a position of impossibility to perform. I think the jury should have been instructed that, as a matter of fact, these plans and specifications we have here are of no benefit to

the City; that the City was not unduly enriched because they are of absolutely no use to us, and they are useless to us because Rossetti, DiCorcia and Mileto made them impossible for us to use, and we were entitled to get a full performance out of them and not a partial performance. If we are entitled to a full performance, then we don't have to pay under any theory of law for a partial performance. The quantum meruit in this case would have to carry with it the proof that the plaintiff was ready, able and willing to continue when, as a matter of law, the plaintiff was out of business as to the partnership. We were not required to take anything else. I think that is very important. Otherwise, I take exception to the fact that this charge was not made."

The gravamen of the defendant's appeal as expressed in its assignment of error, is that the court erred "[I]n failing to charge that the act of voluntary dissolution of the partnership, Rossetti, DiCorcia and Mileto without the prior knowledge or approval of the building committee made it impossible as a matter of law for the partnership to perform its agreement, and it was, therefore, entitled to no payment for any services claimed to have been performed prior to its dissolution." In its brief, the city urges that the "impossibility" resulted from the assignment of the contract by DiCorcia and Mileto to the plaintiff. The defendant argues that contracts for personal professional services cannot be transferred by assignment without the prior knowledge and consent of the other party, and since the defendant had no notice and gave no consent to the assignment, it cannot be held liable under the contract. This argument is not persuasive on the facts of this case. First, the plaintiff offered evidence to prove that there was notice given to the defendant

and that no objection was made. Second, it is a principle of partnership law that, on dissolution, the partnership remains in existence for the purpose of performing existing executory contracts. *Burkle* v. *Superflow Mfg. Co.,* 137 Conn. 488, 494, 78 A.2d 698; 60 Am. Jur. 2d, Partnership, § 198.

As to the defendant's claim concerning the non-assignability of personal service contracts, it is indeed the general rule that contracts for personal services cannot be assigned. To be technically accurate, it is not the benefits that are nonassignable; rather, it is the duties which are nondelegable. Performance, in other words, cannot be delegated to another. 4 Corbin, Contracts, p. 439; 6 Am. Jur. 2d, Assignments, § 11. Thus if a specific artist is hired to paint a picture, the artist cannot delegate his duty of performing. See *LaRue* v. *Groezinger,* 84 Cal. 281, 24 P. 42; 6 Am. Jur. 2d, Assignments, § 13. Personal performance is of the essence. Agreements to render professional services as a physician or lawyer fall within this rule. *Deaton* v. *Lawson,* 40 Wash. 486, 82 P. 879; *Corson* v. *Lewis,* 77 Neb. 446, 109 N.W. 735. Whether a duty is personal such that it cannot be delegated, however, is a question of the intention of the parties to be ascertained from the contract, its nature, and the attending circumstances. Clearly, a contract to render architectural services could be one where personal performance is of the essence. *Smith* v. *Board of Education,* 115 Kan. 155, 22 P. 101. The claims of proof, by which the charge is to be tested, do not support such a conclusion in the case at bar. The defendant's contention is that the contract was personal to the Rossetti, DiCorcia and Mileto partnership. From the claims of proof, however, it is clear that all dealings were with the plaintiff. He was the person in charge of

and responsible for the contract. There was nothing offered to show an intent that the plaintiff's partners could not delegate whatever duties they had to the plaintiff. We cannot say that the court erred in its charge in this respect.

The defendant also claims that the court erred in charging that the plaintiff could recover in quantum meruit. The second count of the complaint properly set up a cause of action in quantum meruit for the reasonable value of the services rendered in accordance with the terms of the agreement. When the defendant hired other architects to do the work the agreement was terminated. There is nothing to show that the termination was justified. The unwarranted repudiation of the agreement by the defendant entitled the plaintiff to recover for the reasonable value of the services already rendered. *Martin* v. *Kavanewsky*, 157 Conn. 514, 519, 255 A.2d 619; *Morici* v. *Jarvie*, 137 Conn. 97, 101, 75 A.2d 47; Such a recovery is permitted without regard to the extent of the benefit conferred on the other party to the agreement. *Kearns* v. *Andree*, 107 Conn. 181, 186, 139 A. 695.

The defendant's remaining assignments of error do not require discussion.

The plaintiff in his cross appeal assigns error in the action of the trial court in directing a verdict for the defendant on the first count of the complaint claiming breach of contract and in the court's denial of his motion to set this verdict aside. If the plaintiff prevailed on the first count he would be entitled to recover that compensation which would leave him as well off as he would have been had there been full performance. *Sabo* v. *Strolis*, 148 Conn. 504, 506, 172 A.2d 609. Under quantum meruit the plaintiff was confined to the reasonable value of his services.

The only evidence presented on the issue of damages was predicated on a recovery in quantum meruit. No evidence was presented to sustain a different recovery based on breach of contract. Had the jury found for the plaintiff on the first count it is clear that he would have been entitled to recover only what he did recover. For this reason it is unnecessary to discuss the plaintiff's cross appeal.

There is no error.

In this opinion the other judges concurred.