[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff is a law firm (The Firm) in the City of New Haven. Richard LoRicco (LoRicco) has practiced law for forty years and heads the Firm comprised of him and his sons. LoRicco has had extensive experience with Real Estate and business ventures.
The Firm instituted this action by a three count complaint. CT Page 7485 The First Count alleges that the defendants Gabrielle Villano (Gabrielle) and Anthony Villano (Anthony) engaged The Firm to provide legal services to the defendants and agreed to pay its customary hourly fee for said legal services. Upon completion of The Firms services on or about October 21, 1996 The Firm billed Gabrielle and Anthony for professional services rendered in the total amount of $9,750.00, "a portion of which has been paidand or credited leaving balance of $6,452.85." The plaintiff in its brief dated June 2, 1998 concedes it did not meet its burden of proof for a breach of an express contract based upon an hourly rate and accordingly judgment is entered on The First Count in favor of the defendants.
The Plaintiff however then asserts that The Firm is entitled to the reasonable value of its legal services (emphasis added) under either of the alternative theories set forth in the Second and Third Counts.
The Second Counts arguably asserts that as Attorneys at Law The Firm rendered services between November 1995 and October 1996 under an agreement between the parties that the plaintiff should charge reasonable fees therefore including disbursements and expenses incidental thereto and that the defendant would pay to the plaintiff the amount due on the plaintiff's account in the premises on demand. As asserted in the First Count, the expenses incidental thereto and that the defendant would pay to the plaintiff the amount due on the plaintiff's account in the premises on demand. As asserted in the First Count, the plaintiff seeks a balance of $6,452.85 as being the charge being reasonable and fairly valued.
The Third Count sounds in unjust enrichment.
After trial and in accordance with the testimony of LoRicco, the plaintiff seeks the sum of $4,827.85 which is half the amount of the total bill. (See Exhibit J).
An examination of Exhibit J shows that Vincent LoRicco (Vincent) paid the sum of $3,250.00 on the total bill. Vincent is the son of Richard LoRicco who has not been made a party to the suit and has not made any cash payments on the original bill.
The claim for services made in this case arise out of a discussion between Garbrielle and Vincent concerning an attempt to acquire a closed well-known restaurant, Fagans. Vincent CT Page 7486 informed Gabrielle that his father LoRicco was personally acquainted with one of the owners of the subject property in which Vincent and Gabrielle showed an interest in buying. Vincent called his father, LoRicco, who visited the restaurant ("Gabrielles") that evening to discuss the prospect of acquiring the property. LoRicco with his wife went to Gabrielle's restaurant to discuss the opportunity so that Vincent on behalf of himself and other LoRicco siblings would acquire 50% of the property with Gabrielle and Anthony, prospective owners of the other 50%. Prior to these discussions Vincent, who is a chiropractor, was a friend and patron of Gabrielles. On two or three Saturday evenings LoRicco went to Gabrielles to discuss the purchase of the property. LoRicco inspected the property with the defendants and concluded the property was worthwhile to pursue. Only after the inspection was the subject brought up about costs. Nothing was specifically discussed as to what the costs would entail.
Prior to the new relationship concerning Fagans, the defendants had two prior experiences with The Firm for legal services an eviction (Exhibit A) and a fire loss (Exhibit B). Neither matter was substantial in nature and payment in full was made. The Firm obtained a property proposal for the sale of Fagans (Exhibit C) and Zoning Regulations (Exhibit D) for which the defendants paid. On November 9, 1995, Joseph Caselli, Jr. forwarded to LoRicco a letter in which he outlined information about the property and an amount of $800,000 cash that the managing directors would likely consider as a sale price. On November 14, 1995 Caselli forwarded a letter of intent (Exhibit G) to LoRicco for the purchase of Fagans to which LoRicco never agreed but made corrections. LoRicco testified to that date no specific terms were discussed with the defendants regarding legal services. LoRicco further testified that Caselli left him with the notion that their lawyers would draw up the papers. After no communication, LoRicco drew up a contract which he forwarded to Caselli. LoRicco learned from Caselli that the seller was considering another contract, a copy of which was given to the defendants and a bill (April 18, 1996) which was later corrected on October 21, 1996. LoRicco's bill dated April 18, 1996 was in the same amount showing a discount of 30%. The billings in this case are in direct conflict with the facts making allowances without explanations to the defendants. Although it was customary to meet with clients at LoRicco's office no such meeting took place in this case. The original meeting with the defendants was social to discuss the deal because Vincent and Gabrielle were CT Page 7487 friends and wanted to get into a business venture. Also LoRicco at no time before billing suggested that the defendants having one interest and his son Vincent for himself and his brother and sister having the other joint interest should have an independent lawyer. When Gabrielle prodded Vincent to get the confusion of the bill straightened out with LoRicco they went to LoRicco's home where LoRicco after some discussion stated that Vincent and Gabrielle's friendship was very important to him and he would take the bill under advisement.
No explanation was given at trial for the interval of six months between the April 18 bill and the corrected bill of October 21, 1996. LoRicco admitted that the bill of October 21, 1996 was wrong and the characterization of Vincent's payment was misleading.
Vincent LoRicco testified nothing was ever said that his father would be a partner. Vincent further testified he was surprised that Gabrielle was surprised when he got the bill. Although he had the impression that Anthony was not going to pay the bill he did not pay his father any cash.
Anthony testified that Vincent requested that his father LoRicco go with them when they went to look at the restaurant. Anthony never assumed he was incurring legal expenses. Anthony called Vincent seventeen times after he got the bill and when he finally made contact, Vincent said he knew the bill was coming but he was reluctant to tell Anthony.
Anthony testified he never engaged LoRicco or The Firm as his lawyer; he never entered into a fee arrangement or was he ever informed about a fee arrangement.
The court can only conclude that the services rendered cannot be considered legal fees and the bill is grounded on an hourly rate for legal services. (See Exhibit J). The defendants testified any services rendered by LoRicco was for the protection of his sons.
This court in Burns v. Koellmer, 11 Conn. App. 375 allowed the award of damages to stand on a verdict which was affirmed by the Appellate Court. In that case as in this case, the plaintiff brought an action on Express Contract later abandoned seeking damages for quantum meruit and unjust enrichment in the Second and Third Counts. As in Burns the plaintiff in this case relies CT Page 7488 on the theory of quantum meruit and unjust enrichment. Unlike the Burns case, however, the plaintiff (The Firm) in this case although it may have had an expectation that it be paid this court from all the testimony cannot conclude that the defendant knew or should have known that they were expected to pay for their services in this case. Vincent volunteered his father's participation in the deal for his "know how" and his acquaintances with one of the parties involved with the property. The Firm was never officially engaged for the services rendered although billed under the name of The Firm. LoRicco although acting as an attorney in some instances was actually a negotiator. LoRicco's reputation as an investor is well known to the community.
The plaintiff in this case used the Second and Third Counts for recovery. The defendants in this case, however, did not know the extent of the work being done or could conclude that The Firm had expectations of being paid. In Burns supra 283, 284.
 "The trial court also charged on the theory of quantum meruit. The question is whether her complaint alleges facts sufficient for such recovery. Both unjust enrichment and quantum meruit are doctrines allowing recovery on the theory of restitution, that is, the restitution to a party of something of which he was deprived because of unjust enrichment of another at his expense. See G. Palmer, 1 Restitution (1978) § 1.1. Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. Rosesetti v. New Britain, 163 Conn. 283, 292, 303 A.2d 714 (1972). Such contracts are determined from evidence of the parties' course of conduct which implies a promise to pay for services rendered. The pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered. Derr v. Moody, 5 Conn. cir. Ct. 718, 721-22, 261 A.2d 290 (1969). If the allegations do support the theory, then the plaintiff was entitled to the charge on quantum meruit for the recovery of the value of the services rendered. Rossetti v. New Britain, supra 292."
In this case the court cannot conclude that an implied contract for services existed between the plaintiff and the defendants. LoRicco may have been acting individually but certainly based upon the prior limited relationship between The CT Page 7489 Firm and the defendants there could not be an understanding that they were expecting a bill from the plaintiff for services. There is no course of conduct which implies a promise to pay The Firm for the services rendered. The allegation of the Second and Third Counts do not support the theory that the plaintiff was entitled to the charge on quantum meruit for the value of the services rendered.
Accordingly, judgment is entered in favor of the defendants on the First, Second and Third Counts.
Frank S. Meadow Judge Trial Referee