[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
The defendant, Frazier, Lamson, Budlong, P.C.("FLB"), has moved to strike all of the counts in the Revised Complaint filed by United Stone America ("USA") pursuant to Practice Book § 10-39, et seq. on the grounds that each count fails to state a claim upon which relief can be granted.
Allegations of the Complaint
On December 18, 1995, FLB and Town of Manchester ("Manchester") entered into a Standard Form of Agreement Between Owner and Architect, AIA Document B 141 ("the Contract") to provide certain architectural services for the alterations and additions to the Manchester Town Hall ("the Project"). USA is not a party to the Contract. The plaintiff has incorporated the Contract into the Complaint and, therefore, the court can consider the terms of the Contract in ruling on the present Motion.
Article 2.6.4 of the Contract provides, in relevant part:
 The Architect shall be a representative of and advise and consult with the Owner (1) during construction until final payment to the Contractor is due . . . [t]he Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement unless otherwise modified by written instrument.
Article 2.6.11 of the Contract imposed the following obligation on FLB:
 The Architect shall have the authority to reject Work which does not conform to the Contract Documents . . . [h]owever, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or a responsibility of the_Architect to the Contractors Subcontractors, material and equipment suppliers, their agents or employees or other persons performing portions of the Work.
Article 9.5 of the Contract between FLB and Manchester contained an anti-assignment clause. This clause reads, in relevant part:
CT Page 1187 Neither Owner nor Architect shall assign this Agreement without the written consent of the other.
Article 9.7 of the contract between FLB and Manchester specifically prohibited the creation of a beneficiary relationship in favor of a third party:
 Nothing contained in this Agreement shall create a contractual relationship with, or cause of action in favor of, a third party against either the Owner or Architect.
Subsequent to the execution of the Contract between FLB and Manchester, on or about September 18, 1996, Manchester hired USA to build the project in accordance with FLB's designs. Revised Complaint, ¶ 6. On December 15, 2000, all rights held by Manchester under its contract with FLB were assigned to USA. Revised Complaint, ¶ 25.
The First Count of the Revised Complaint includes the following allegations:
 8. On or about April 23, 1998, USA substantially completed the work under the Contract and Manchester accepted the Contract work from USA, issuing a temporary certificate of occupancy.
 9. As further evidence that the Project was substantially complete, Manchester actually occupied and began to use Town Hall during April and May 1998.
 10. Despite the fact that the Project was substantially complete, and despite the. fact that Manchester was enjoying the use and occupancy of Town Hall, Manchester terminated USA's contract on June 1, 1998, claiming that USA was in breach of the Contract.
 11. Manchester's termination of the Contract was effectuated, in whole or in part, by the acts and omissions of FLB, as described below in Paragraph 13.
 12. Under the Contract, USA could not be terminated for default unless and until FLB certified, in writing, that USA was in material breach of the CT Page 1188 Contract, and the grounds thus existed to terminate the Contract for cause unless USA cured its material breach within the cure period set forth in the Contract.
 13. Although no grounds existed to justify such certification by FLB (a fact known to FLB), and although FLB also knew that USA had already substantially completed its obligations under the Contract, it nonetheless wrongfully produced such certification upon demand by the Town. FLB was aware of the contractual realtionship between USA and Manchester, but still intentionally interfered with that relationship by:
a. wrongfully producing the certification upon demand from the Town;
 b. certifying that grounds existed to terminate the Contract for default by USA without any independent investigation;
 c. by misrepresenting the status and progress of USA's work leading the Town to terminate USA.
In the Revised Complaint, USA asserts five counts against FLB. The First Count alleges intentional. interference with a beneficial or contractual relationship. The Second Count alleges negligence. The Third Count alleges that USA was as a third party beneficiary of the original contract between Manchester and FLB. The Fourth and Fifth counts allege breach of contract and negligence, respectively, as an assignee of Manchester.
FLB has moved to strike all of the counts of the Revised Complaint on the grounds that they fail to state a cause of action.
Discussion of Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 10-39; Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989); Mingachos v CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990); Blancato v. Feldspar Corp.,203 Conn. 34, 36, 522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them. Dennison v. Klotz,
CT Page 118912 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg, 200 Conn. 367, 370,511 A.2d 336 (1986).
FLB has moved to strike the First Count on the grounds that as an agent of Manchester, FLB cannot be sued by USA for tortious interference with contractual relations. The essential elements of a claim for tortious interference with contractual relations are: 1) the existence of a contractual or beneficial relationship; 2) that the defendant, knowing of that relationship, intentionally sought to interfere with it, and; 3) as a result of such interference the plaintiff suffered actual loss. "A cause of action for tortious interference with a business expectancy requires proof `that the defendant was guilty of fraud, misrepresentation, intimidation or molestation; Busker v. UnitedIlluminating Co., 156 Conn. 456, 461, 242 A.2d 708 [1968]; Skene v.Carayanis, 103 Conn. 708, 715, 131 A. 497 [1926]; or that the defendant acted maliciously. Goldman v. Feinberg, 130 Conn. 671, 675, 37 A.2d 355
[1944].' Kecko Piping Co. v. Monroe, 172 Conn. 197, 201-202, 374 A.2d 179
(1977)." Jones v. O'Connell, 189 Conn. 648, 660, 458 A.2d 355 (1983).
 "[A]n agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract, Boyce v. American Liberty Insurance Co., 204 F. Sup. 317, 318 (D. Conn. 1962); see also Kecko Piping Co. v. Monroe, 172 Conn. 197, 202, 374 A.2d 179
(1977); Shaw v. Merrick, 60 App.Div.2d 830, 401 N.Y.S.2d 508, 509 (1st Dept. 1978), [the agent] could be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain" Bowman v. Grolsche Bierbrouwerij B.V., 474 F. Sup. 725, 733
(D. Conn. 1979).
Wellington Systems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 168,714 A.2d 21 (1998).
While an agent such as FLB normally cannot be deemed to have interfered with the contract of its principal, it can be liable for intentional interference with the contract if it acted in bad faith, maliciously, wantonly or beyond the scope of its authority. Multi-Service v. Town ofCT Page 1190Vernon, 193 Conn. 446, 451, 447 A.2d 653 (1984). The Revised Complaint as a whole seems to allege that FLB was merely complying with the wishes of the Town of Manchester, its principal, when it took actions contrary to the interests of the plaintiff. However, when taken in a manner most favorable to the plaintiff, see Norwich v. Silverberg, 200 Conn. 367,370, 511 A.2d 336 (1986), the First Count does contain language which could be construed as alleging bad faith and/or actions outside the scope of its employment on the part of FLB. Therefore, the Motion to Strike the First Count is denied.
The Second Count of the Revised Complaint alleges a cause of action for negligence. The necessary elements of a negligence action are: duty;
breach of that duty; causation; and, damages. RK Constructors, Inc. v.Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153 (1994). "To sustain a cause of action [in negligence], the court must determine whether the defendant owed a duty to the [plaintiff] and the applicable standard of care."Fidelity Casualty Co. v. Constitution National Bank, 167 Conn. 478,482, 356 A.2d 117 (1975). "The existence of a duty is a question of law [o]nly if . . . duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." Shore v. Stonington, 187 Conn. 147, 151-52,444 A.2d 1379 (1982).
FLB cannot owe a duty to USA without breaching its agency agreement with Manchester. "An agent employed [by] another, cannot [act] for himself, whether he be actually or constructively an agent. He is, in such case, a trustee for his employer." Church v. Sterling, 16 Conn. 388,400. Nor can a dual agency exist, with the alleged agent attempting to represent adversary parties, unless there be a disclosure and consent by both parties. Zimmerman v. Garvey, 81 Conn. 570, 571, 71 A. 780 (1909),Baskin v. Dam, 4 Conn. Cir.Ct. 702, 239 A.2d 549 (1967). In the current action there is no indication that Manchester consented to FLB assuming a duty toward USA. Further, Article 2.6.11 of the Contract specifically states that FLB assumes no duty towards any contractor who may be engaged to work on the Project.
Negligence cannot be predicated upon the failure to perform an act which the actor was under no duty or obligation to perform. Behlman v.Universal Travel, 4 Conn. App. 688, 496 A.2d 962 (1985). Here, the defendant had no relationship with the plaintiff. The Contract between FLB and the Town provides that the plans at issue were released by the Town to the potential bidders. Contract, Article 2.5.1. The claimed acts of negligence were solely the obligation of Manchester as the disclosed principal. Other than inaccurate plans, which, under the Contract, were provided to USA by Manchester, the only negligence about which the plaintiff complains in the Second Count is FLB's failure to disclose the CT Page 1191 presence of lead paint. However, under the terms of the Contract, it was the duty of the Town of Manchester "to furnish all tests for hazardous materials." Contract, Article 4.7. Because FLB owed no duty to USA, the Second Count of the Revised Complaint fails to state a cause of action, and must be stricken.
The Third Count of the Revised Complaint alleges USA is a third party beneficiary of the contract between FLB and Manchester. In Knapp v. NewHaven Road Construction Co., 150 Conn. 321, 325, 189 A.2d 386 (1963), the Supreme Court reaffirmed that "[t]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties." As set forth above, Article 9.7 of the Contract specifically negates any intent to create a contractual relationship with, or cause of action in favor of, a third party against either the Manchester or FLB.
In Grigerik v. Sharpe, 247 Conn. 239, 721 A.2d 526 (1998), the Supreme Court reaffirmed that the intent of both parties, rather than just one of the parties to a contract, determines whether a third party is to be afforded third party beneficiary status under a contract. In light of the express written intent of both parties to the Contract that there be no third party beneficiary, USA's claim that it is a third party beneficiary under the Contract as set for in the Third Count is hereby stricken
In the Fourth and Fifth Counts of the Revised Complaint USA alleges, "all rights held by Manchester pursuant to damages in connection with its contract with FLB were assigned to USA." The defendant has moved to strike these Counts on the grounds that the rights of Manchester could not have been assigned because the Contract between FLB and Manchester contains an anti-assignment clause which prohibits assignment without the written consent of the other party to the Contract.
In the recent case of Rumbin v. Utica Mutual Ins., 254 Conn. 259,757 A.2d 526 (2000), the Supreme Court considered the validity of the assignment of rights to receive payment under an annuity contract where the contract prohibited assignment. The Court held that the prohibition against assignment found in the contract did not deprive the assignor of the power to assign the contract, but only the right to do so and, therefore, the assignment was not invalid, but the other party to the contract could sue the assignor for damages as a result of the breach of the contractual provision against assignment. This case does not involve the assignment of an annuity contract, and involves professional services CT Page 1192 of the type normally deemed to be nonassignable. See Rossetti v. NewBritain, 163 Conn. 283, 291, 303 A.2d 714 (1972). However, the defendant has not addressed this distinction. Moreover, the Court in Rumbin did not specifically limit its holding to annuity contracts. Arguably, underRumbin the anti-assignment provision in the Contract between FLB and Manchester is insufficient to invalidate the assignment from Manchester to USA, but FLB has a cause of action for damages against Manchester for assigning its rights under the Contract without the written consent of FLB. For the foregoing reasons the Motion to Strike the Fourth and Fifth Counts of the Revised Complaint are denied.
By the court,
____________________ Aurigemma, J.