## STATE OF CONNECTICUT *v.* EARL BRIGGS

HOUSE, THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued May 4—decided June 8, 1971

*William H. Clendenen, Jr.,* with whom were *Kenneth R. Kreiling* and, on the brief, *Thomas J. Corradino,* for the appellant (defendant).

*Jerrold H. Barnett,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Richard P. Sperandeo,* assistant state's attorney, for the appellee (state).

THIM, J.  The defendant was charged with, and convicted of, breaking and entering a dwelling in North Haven in the daytime on June 28, 1968, in violation of General Statutes § 53-73.  The defendant was apprehended by the North Haven police in the vicinity of the entered dwelling at about 10 p.m. on June 28.  The items taken consisted of canned foods, a bottle of sherry, and one pillowcase. The case was tried to the court which found the defendant guilty.  Thereafter, the defendant entered a plea of "guilty" to a charge of third offender, and judgment was rendered, sentencing him to a term of three to thirty years in the state prison.  The defendant has appealed, assigning many errors to the court's finding.  In essence, however, the defendant claims that he was convicted of a crime which must occur in the daytime, while all the evidence points to a crime which took place at night.  Thus, the basic, and dispositive, claim is that the trial court's conclusion of guilt was contrary to the evidence.

Normally, in considering a claim of this nature, no finding is necessary, for we employ the evidence as printed in the appendices to the briefs.  *State* v. *Allen,* 155 Conn. 385, 396, 232 A.2d 315; *State* v. *Davis,* 153 Conn. 228, 229, 215 A.2d 414.  We must determine whether, on all the evidence, the trial court could have concluded, beyond a reasonable doubt, that the defendant violated § 53-73.

A detailed recital of the evidence which the state produced is unnecessary.  It is sufficient to note that the defendant and another were observed together, by a police officer, in a blue 1960 compact car, registration number FA 5720, at about 8:30 p.m. on June 28, 1968, in a North Haven gasoline station. It was already dark at that time.  At about

10 p.m. the same police officer observed the same vehicle parked on a road about one-quarter to one-half mile from the scene of the breaking and entering. Near the vehicle the police officer found a pillowcase which contained cans of food and a bottle of sherry. The grass and ground were wet because it had rained earlier in the evening, but the pillowcase was dry. The cans of food, the sherry and the pillowcase were identified as having come from the dwelling which had been broken into. The defendant returned to the car on foot while the police were there, claimed ownership of the vehicle, was questioned briefly, and was taken to headquarters for further questioning.

Additional evidence presented, when combined with that noted above, points to a conclusion that the defendant did break and enter the dwelling in question. It also supports the trial court's conclusion that the breaking and entering was done sometime between 8:30 and 10 o'clock at night. There was also testimony to the effect that it was dark during those hours, and in any event, it was dark during some portion of that period.

Our laws cover the breaking and entering of dwellings, both at night and in the daytime. Nighttime breaking and entering is common-law burglary, and is defined as a breaking and entering of the dwelling of another in the nighttime, with an intent to commit a felony therein. *State* v. *Bell*, 153 Conn. 540, 541, 219 A.2d 218; *State* v. *Ward*, 43 Conn. 489, 493. Our statutes do not codify this crime. They merely provide a penalty for its commission. General Statutes § 53-68. The state must prove, inter alia, that the breaking and entering occurred at night in order to obtain a conviction of burglary.

The defendant, here, was charged with breaking

and entering a dwelling in the daytime. This is a statutory crime, unknown at common law, and designed to punish "[a]ny person who, in the daytime, with intent to commit any crime therein, breaks and enters any building . . . in the possession of another used as a dwelling." General Statutes § 53-73. The language of the statute requires that the act be committed in the daytime, for the statute to apply. The state argues, however, that the phrase "in the daytime" is meant merely to distinguish the crime from burglary, and, thus, that a conviction under § 53-73 may stand if the state proves a breaking and entering at a time uncertain, or even at night.

The state's argument is appealing, in that it closes an apparent gap in our laws. If burglary requires proof of nighttime, and if § 53-73 requires proof of daytime, then there can be no conviction of breaking and entering a dwelling where the state is unable to establish the time within those broad categories. The intent of the legislature, however, must be found in the meaning of what it in fact said, and not in what it meant to say. *Schwab* v. *Zoning Board of Appeals,* 154 Conn. 479, 482, 226 A.2d 506; *Connecticut Light & Power Co.* v. *Sullivan,* 150 Conn. 578, 581, 192 A.2d 545.

Penal statutes must be strictly construed. *State* v. *Moreno,* 156 Conn. 233, 238, 240 A.2d 871; *State* v. *Benson,* 153 Conn. 209, 215, 214 A.2d 903; *Dennis* v. *Shaw,* 137 Conn. 450, 453, 78 A.2d 691. Where the plain meaning of words is not contradicted by other provisions, their meaning must not be disregarded because we believe that the framers did not intend what they said. *Niedzwicki* v. *Pequonnock Foundry,* 133 Conn. 78, 82, 48 A.2d 369. Where the wording is plain, we will not speculate as to any supposed

intention. *Jack* v. *Torrant,* 136 Conn. 414, 418, 71 A.2d 705. We cannot read something into a statute in order to reach a just result. *State* v. *Malm,* 143 Conn. 462, 467, 123 A.2d 276. Our construction cannot distort the words used. *Pierce* v. *Albanese,* 144 Conn. 241, 247, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21. They must be construed according to the commonly approved usage of the language. General Statutes § 1-1; *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886; *State* v. *Laffin,* 155 Conn. 531, 535, 235 A.2d 650. And no clause shall be considered superfluous, absent compelling reasons to the contrary. *Niedzwicki* v. *Pequonnock Foundry,* supra.

The language in § 53-73 is extremely direct and abundantly clear in meaning. The statute covers instances where dwellings are entered "in the daytime." In order to apply the state's proffered construction, we would have to engage in linguistic gymnastics which would be quite inappropriate even if a liberal construction were in order. With a strict construction required, any such attempt would be totally improper. We would have to say that "daytime" may mean "nighttime," or "any time." The mere statement of the result compels our conclusion. While the state's result might be just, it is not what the statute means. Neither the common usage of the word "daytime," nor even a remote usage, includes "nighttime" or "any time" as a definition of "daytime." The argument might be reasonable if the statute used the term "day," but the specific usage of "daytime" is clear. The language of § 53-73 mandates that the state must prove "daytime" in order to obtain a conviction under that statute.

The state also argues that the statutes prior to 1949 demonstrate that "in the daytime" can mean

any time, and can be proved by a showing of night-
time breaking and entering. The key to the resolu-
tion of this claim is in the history of the statutes.

Breaking and entering a dwelling in the nighttime
first appeared in the statutes in the revision of 1821.
At that time another new statute appeared which
provided for breaking and entering a building other
than a dwelling at night. Statutes, 1821, p. 154 § 24.
It would appear that the intent at that time was to
fill gaps in common-law burglary which permitted
conviction only for nighttime breaking and entering
of a dwelling with intent to commit a felony. That
first "daytime" statute applied only when a person
in a dwelling was put in fear or dread. Statutes,
1821, p. 155 § 25. It did not apply to the breaking
or entering of a building; it applied to the inhab-
itants thereof.

In the Revision of 1902, breaking and entering
was provided for in several statutes. One statute,
§ 1194, dealt solely with breaking and entering
a dwelling in the daytime. It was so entitled, and
its language is identical to that found in the General
Statutes § 53-73, which remains unchanged to date,
although it has been repealed effective October 1,
1971. Another statute, § 1195, was entitled "Break-
ing and entering in the night season," and is almost
identical to our present breaking and entering with
criminal intent statute, § 53-76, the sole difference,
in substance, being that § 1195 applied only to night-
time breaking and entering. Section 1196, however,
dealt with the corresponding daytime crime, in lan-
guage identical to § 1195, except that "in the night
season" was replaced by "in the daytime." The 1902
statutes also included a "proof statute," § 1198.
Thereunder, one who was prosecuted for nighttime
criminal breaking and entering could be convicted of

daytime breaking and entering if the jury were uncertain as to whether the act took place at night or in the daytime, and the jury could convict of daytime breaking and entering on a charge thereof, if the proof showed breaking and entering in the nighttime. The "proof statute" referred to criminal breaking and entering in the night season, which would be § 1195, and criminal breaking and entering in the daytime, which would appear to be § 1196, for the statute which applied to breaking and entering a dwelling (§ 1194) was specifically entitled "Breaking and entering *dwelling*." (Emphasis added.) Neither § 1195 nor § 1196 referred to dwellings. In substance, as construed, §§ 1195, 1196 and 1198 combined to create what is now § 53-76.

Through the 1930 Revision of the statutes, the three sections of the 1902 statutes remained substantially unchanged. In 1945, § 6098 of the 1930 Revision (breaking and entering in the daytime as applied to nondwellings) and § 6102 of the Revision of 1930 (the proof statute) were repealed. Section 6097 (breaking and entering into nondwellings in the nighttime) was amended by deleting "in the night season." The new statute, as it appeared in the Revision of 1949, § 8413, was entitled "Breaking and entering with criminal intent," and is, in substance, identical to the present § 53-76. This reenforces our construction of the three 1902 statutes. The legislature merged daytime and nighttime breaking and entering, in reference to buildings other than dwellings, thereby removing the need to prove time. The proof statute which had, in effect, permitted the same result under the separate statutes, was thus no longer necessary. The fact that the proof statute was considered unnecessary after the merger of day and night nondwelling breaking and entering

demonstrates that the legislature did not intend the proof statute to apply to daytime breaking and entering of dwellings.

The merger of the two statutes, with the resulting statute making no mention of time, also demonstrates that the legislature was aware of how to word a statute which would cover breaking and entering at any time of the day or night: it simply did not include a reference to time. See also Public Acts 1870, c. 45, § 1; General Statutes §§ 53a-101—53a-103. This demonstrates that the use of "in the daytime" in the breaking and entering of a dwelling statute must have been intended to mean just that: the crime must have occurred *in the daytime,* and time is thus an element of proof. Absent proof of time, there can be no conviction of breaking and entering in the daytime.

The term "daytime," as used in § 53-73, must be given its ordinary meaning. Clearly, the phrase is meant to cover the time not covered by burglary. We have defined "nighttime" or "night season," as used in the definition of burglary, as when there is not sufficient daylight left to enable one to discern the features of another by natural sunlight. *State* v. *Bell,* 153 Conn. 540, 542, 219 A.2d 218; *State* v. *Morris,* 47 Conn. 179, 182. Thus, "daytime" can be defined, for the purposes of § 53-73, which is, in effect, daytime burglary, as that time of day when there is sufficient daylight so as to be able to discern the features of another by natural sunlight.

In the case at bar, as noted, all of the evidence points to the fact that the crime was committed between 8:30 and 10 o'clock at night. Even if the trial court did not believe that it was already dark at 8:30 p.m. it is evident that the state has failed to indicate any evidence which shows that the breaking

and entering took place in the daytime. It thus has not proved a violation of General Statutes § 53-73, breaking and entering a dwelling in the daytime.

Finally, the state argues that § 53-73 is a lesser included crime in the crime of burglary. Section 53-73 requires proof of daytime. Burglary requires proof of nighttime. The proof required for each crime is different, and directly contrary to the other. One cannot be included in the other.

As the state has failed to point to any evidence from which a trier could conclude that the crime was committed in the daytime, the judgment cannot stand. The conclusion of the trial court was contrary to the evidence and must be set aside. As a result, the conviction of the defendant as a third offender must also fail.

There is error, the judgment is set aside, and the case is remanded with direction to render judgment that the defendant is not guilty under both parts of the information and ordering that he be discharged.

In this opinion the other judges concurred.