TOWN OF PLAINVILLE *v.* JOSEPH B. BURNS, COMMISSIONER OF TRANSPORTATION, ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 182873

Memorandum filed September 5, 1974

*David E. Koskoff,* town attorney, for the plaintiff.

*Robert K. Killian,* attorney general, and *S. Victor Feingold* and *Clement J. Kichuk,* assistant attorneys general, for the named defendant.

*LeFoll & Humphrey,* of Rocky Hill, for the defendant Robertson.

*Gillespie & Nicksa,* of Unionville, as amicus curiae.

CASALE, J. The plaintiff, the town of Plainville, seeks to enjoin the proposed sale of Robertson Airport, a privately owned airport located in the town, prior to the holding of a referendum within that municipality pursuant to § 13b-42 (d) of the General Statutes. The case was submitted to the court on a stipulation of facts read into the record and agreed to by all counsel of record. At the same time, Joseph B. Burns, successor to A. Earl Wood as commissioner of transportation, was substituted as a party defendant. The owner and alleged seller of the airport is the defendant Stamford N. Robertson. The alleged purchaser is the defendant Joseph B. Burns, commissioner of transportation. The plaintiff claims that § 13b-42 (d) is applicable to the proposed transaction. In this respect, the plaintiff claims that the statute requires a referendum within the municipality regarding the proposed sale prior to the consummation of the transaction. The defendants disagree and claim that the transfer of the air-

port is a private matter between themselves and does not require the prior consent of the town or, if such consent is not given, judicial approval.

The sole issue is whether the purchase of a privately owned airport by the state of Connecticut requires compliance with § 13b-42 (d) of the General Statutes.

The proposed sale and purchase of Robertson Airport is within the contours of § 13b-42 (c) and outside the requirements of § 13b-42 (d).[1]

The commissioner's determination with respect to privately owned property is conclusive, according to the language of § 13b-42 (c): "In connection with the purchase or taking by the commissioner of any such property owned by any person other than a municipality, the determination by the commissioner

---

[1] "Sec. 13b-42. AIRPORT OR RESTRICTED LANDING AREA OWNED OR LEASED BY THE STATE. . . . (c) The commissioner may purchase or take and, in the name of the state, may acquire title in fee simple to, or any lesser estate, interest or right in, any airport, restricted landing area or other air navigation facility owned or controlled by any municipality or by any two or more municipalities jointly *or by any other person,* if he finds that the acquisition of such airport, restricted landing area or other air navigation facility is necessary to the maintenance of adequate air transportation in the state or is required by public convenience and safety, except that no such purchase, taking or acquisition may be made by the commissioner of any such airport, restricted landing area or other air navigation facility which is owned or controlled by and used as a part of a research, development or manufacturing activity, unless with the consent of the one owning or controlling such airport, area or facility. *In connection with the purchase or taking by the commissioner of any such property owned by any person other than a municipality, the determination by the commissioner that such purchase or taking is necessary shall be conclusive.* Such taking shall be in the manner prescribed in section 48-12 for the taking of land for state institutions. [Italics supplied.]

"(d) In connection with the purchase or taking by the commissioner of any such property in a municipality, the commissioner shall file with the chief executive officer or first selectman of such municipality a written statement finding that such purchase or taking is necessary, setting forth the reasons supporting such finding and

that such purchase or taking is necessary shall be conclusive." Since the language of this subsection is clear, it is not subject to statutory construction. *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73; *State ex rel. Cooley* v. *Kegley,* 143 Conn. 679, 683.

In contradiction is subsection (d), requiring the commissioner to file a written statement of necessity with a municipality pursuant to the purchase or taking of property by the commissioner, and to acquire municipal approval. The plaintiff maintains that the language of § 13b-42 (d), "any such property in a municipality," includes privately owned airports. The construction placed upon "any" would be comprehensive. See *Great Atlantic & Pacific Tea Co.* v. *Katona,* 151 Conn. 417, 420–21. Therefore, the first sentence of subsection (d) raises the question of the true meaning of subsection (c). Use of

requesting approval by such municipality of such purchase or taking, which approval shall be by vote of such municipality at a referendum held therein at the next regular election held in such municipality. If the municipality by vote disapproves the purchase or taking, the commissioner may, within thirty days following such vote, appeal to the superior court for the county in which the municipality is located and the appeal shall be accorded a privileged status on the docket and trial list. The court shall, after hearing, determine whether the commissioner has proven the necessity for the purchase or taking and the burden of proving such necessity shall be upon the commissioner. If the court, after hearing, deems that the commissioner has not sustained such burden of proof, the court shall enter judgment for, and may award reasonable costs to, the municipality. If the court, after hearing, determines that the commissioner has sustained such burden of proof, the court may set aside the action of the municipality disapproving the purchase or taking and may enter such order upon such terms and conditions as it deems appropriate to safeguard the rights of the parties and the public. *After a purchase or taking has been legally approved, or its disapproval has been set aside by the superior court, the state may proceed with the purchase or taking upon paying just compensation to the municipality.* In case the state cannot agree with the municipality upon the amount of such compensation, the amount shall be determined in the manner prescribed in section 48-12. An appeal from the amount so determined shall not act as a stay of such purchase or taking. [Italics supplied.]"

the word "in" rather than "of" has generated this controversy. The defendants maintain that subsection (d) applies strictly to the purchase or taking of property "in a municipality" which is owned by the municipality. The strength of the defendants' contention is bolstered by the fact that "[a]fter a purchase or taking has been legally approved, or its disapproval has been set aside by the superior court, the state may proceed with the purchase or taking upon paying just compensation to the municipality." § 13b-42 (d). The thrust of subsection (d) deals exclusively with property owned by a municipality. Any other construction would place the statute in violation of the fifth amendment to the constitution of the United States and article first, § 11, of the Connecticut constitution. When a statute is capable of more than one construction, the court may assume that the legislative intent was to achieve a rational and sensible "result and must, when possible, construe statutes accordingly." *Stone* v. *Sullivan,* 154 Conn. 498, 503; *Masone* v. *Zoning Board,* 148 Conn. 551, 556.

Furthermore, "where the wording is plain . . . [the court may not] speculate upon any supposed intention." *Jack* v. *Torrant,* 136 Conn. 414, 418; *State* v. *Briggs,* 161 Conn. 283, 286. Statutes must "be construed according to the commonly approved usage of the language." General Statutes § 1-1 (a). The intent of the legislature must be ascertained from the language that it used; *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375, and, if the language is not ambiguous, resort to aids of interpretation are unnecessary. *Johnson* v. *Board of Tax Review,* 160 Conn. 71, 73.

If the court considers the language unclear, it may resort to other aids such as legislative history. It is true that discussions and statements made

before a committee of a legislative body, or in debate before that body, are not admissible in proof of a legislative intention in an act passed by the body, for the reason that it is impossible to determine what effect the individual discussion had upon the action taken. *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 111; *Hartford* v. *Connecticut Co.,* 107 Conn. 312, 341; *Litchfield* v. *Bridgeport,* 103 Conn. 565, 573. In addition, such statements, inadmissible in evidence, do not become competent for consideration by inclusion in the arguments of a brief. *Charlton Press, Inc.* v. *Sullivan,* supra. Nevertheless, the court may take judicial notice of a transcript of the legislative proceedings as an aid in the determination of the legislative intent. *Lee* v. *Lee,* 145 Conn. 355, 358; *Bird* v. *Plunkett,* 139 Conn. 491, 504. Also, the intent of the General Assembly in passing an act, as expressed by it, is the controlling factor, and, in ascertaining this, the application of common sense to the language is not to be excluded. *State* v. *Bello,* 133 Conn. 600, 604; *Sarges* v. *State,* 26 Conn. Sup. 24, 28.

Common sense as well as the application of legislative history dictates but one conclusion, i.e. that § 13b-42 (d) applies strictly to municipally owned airports. See 13 S. Proc., pt. 6, 1969 Sess., pp. 3039–42, 3045–50 (May 30, 1969) (especially p. 3041 for Senator Gunther's remarks regarding the municipal orientation of § 13b-42 [d]); 13 H.R. Proc., pt. 9, 1969 Sess., pp. 4275–81, 4289 (May 28, 1969) (especially pp. 4275 and 4279). This legislative history indicates, among other things, that the House amended and modified the statute by adding subsection (d). The amendment applied to municipal airports. Subsequently, the Senate considered and passed the substituted bill as amended by the House. The purpose of the House amendment, as explained on the floor of the Senate, was to require a public

hearing, referendum and appeal, if necessary, when the commissioner "wants to take over a municipal airport." 13 S. Proc., pt. 6, 1969 Sess., p. 3042.

The plaintiff contends that *State* v. *Simmons*, 155 Conn. 502, is controlling, since it represented the established policy of the state at the time of the enactment of the department of transportation bill. In that case, the state aeronautics commission, under its statutory right (§ 15-79) of eminent domain, attempted, for the purpose of expanding and improving Bradley International Airport, to take certain property of the defendants, who claimed successfully that the commission lacked authority to condemn the property because prior approval had not been obtained from the town of East Granby. With respect to that attempted condemnation for the expansion and improvement of the state airport, § 15-79 was not the predecessor to § 13b-42 (c) and (d), but to §§ 13b-43 and 13b-44, dealing with municipal airports and the establishment and maintenance of state airports. The *Simmons* case dealt exclusively with expansion; in such an instance, § 13b-44 would be controlling today. In conclusion, §§ 13b-42 (c) and (d) are new sections which have no direct ancestry. The legislature in enacting §§ 13b-42 (c) and (d) sought to depart from prior policy as respects state acquisition of privately owned property for the creation of a state airport (§ 13b-42 [c]), while reserving the remnants of earlier policy respecting state acquisition of municipal property for the creation of a state airport (§ 13b-42 [d]). This change of policy has been expressed in unequivocal language. *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650. Subsection (c) makes the commissioner's determination conclusive respecting privately owned property. Furthermore, subsection (d) expressly provides that just compensation is to be paid to the municipality, creating the

inevitable inference that subsection (d) applies exclusively to municipally owned property despite its use of the regrettable language, "any such property in a municipality."

Accordingly, this result requires the state to comply merely with subsection (c) and ignores subsection (d), so that the municipality will lose some of the influence which it would naturally have through its zoning and planning regulations for the benefit and general welfare of the local community. Nevertheless, the result is dictated by a practical construction. The state in this circumstance can function as any other bona fide purchaser.

The plaintiff town of Plainville's claim for injunctive relief must be, and hereby is, denied, and judgment may enter for the defendants.