[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brought this action to foreclose a mechanic's lien on property of the defendant, River Associates, Inc. At the onset of trial, the defendants, River Associates, Inc. and Kenneth Kraus, stipulated as to the amount owing for services performed by the plaintiff and did not participate further in the trial. The defendant, Connecticut Savings Bank ("CSB") and the defendant, Connecticut Attorneys Title Insurance Corp. (CATIC), as surety under a bond substituted for the mechanic's lien, defended the action contending, in essence, that, because the mechanic's lien is invalid, CSB has priority by virtue of its mortgage.
Based on a preponderance of the evidence, the court finds the following facts proven.
In 1987, River Associates, Inc. owned a parcel of land on the Quinnipiac River, in New Haven. At that time, Red Rooster Construction Company was a building contractor which had conducted business for approximately seventeen years in the Greater New Haven Area.
In April, 1987, River Associates, Inc. and Red Rooster began negotiations for the construction of residential condominium units and a commercial building on said premises. Red Rooster was to act as the general contractor and River Associates, as the developer.
In September, 1987, Red Rooster entered into an agreement with River Associates and the defendant, Kenneth Kraus, by the terms of which Red Rooster agreed to construct 26 residential condominium units and approximately 4,000 square feet of commercial space on land owned by River Associates at 660 Quinnipiac Avenue in New Haven (the "Project") for the contract price of $3,376,985.14.
The Declaration of Condominium was recorded on the Land CT Page 5982 Records of the City of New Haven on July 5, 1989.
Red Rooster commenced construction on September 30, 1987 and worked continuously until August 23, 1989 when River Associates directed Red Rooster to stop work because the decline in the economy made the Project economically unfeasible.
Red Rooster furnished said materials and services with the consent of River Associates and Kenneth Kraus and pursuant, to an agreement with River Associates.
No written contract was ever executed although two separate draft contracts were prepared and reviewed by the parties. On March 31, 1988, a final schedule of values was in place. Buildable drawings were finalized in February, 1988.
In September, 1987, Red Rooster was aware that Connecticut Savings Bank would be the construction lender. On February 3, 1988, Connecticut Savings Bank loaned money to River Associates, secured by a construction mortgage on the premises dated February 3, 1988 and recorded February 4, 1988.
Between September 30, 1987 and August 23, 1989, Red Rooster had submitted ten requisitions to River Associates. River Associates paid the first eight requisitions which totalled $1,440,451.78, but not requisitions 9 and 10 which totalled $258,402.36.
Accompanying requisitions 2 through 6 were written mechanic's lien waivers prepared by Red Rooster. The lien waivers, preprinted forms modified by typed language limiting the waivers to specific time periods, indicated the plaintiff's intent to waive rights only as to work performed as of the date of execution of the waiver. CSB did not rely on a general waiver when advancing funds.
On September 25, 1989, after River Associates advised Red Rooster that it did not have the funds to pay these two requisitions, Red Rooster filed a mechanic's lien against the Project to secure payment of its claim.
The mechanic's lien, which was filed to secure payment for the materials and services furnished in the construction of the buildings, is recorded in Volume 148 at Page 95 of the New Haven Land Records. A copy of the certificate of mechanic's lien was served on River Associates, an owner, but not on CSB. There was no evidence of the filing of a lis pendens at any time.
During the course of construction, Red Rooster's work was done at the direction of River Associates. In August, 1989, at CT Page 5983 the direction of River Associates, Red Rooster ceased to work at the premises. Red Rooster stipulated on the record that, if successful, it would not seek to recover from Connecticut Savings Bank on the bond, but would limit recovery to a demand on CATIC.
By its note dated February 3, 1988, River Associates promised to pay to the order of CSB the principal sum of $1.8 million, payable with interest thereon as provided in the note.
By deed of February 3, 1989, River Associates, to secure the note, mortgaged to CSB the above property of which it was then the record owner. The deed is conditioned on the payment of the note according to its tenor and the performance of certain covenants and conditions contained in the mortgage deed. The mortgage deed was dated February 3, 1988, and recorded February 4, 1988 in Volume 3837 at Page 19 of the New Haven Land Records.
On February 3, 1988, CSB advanced $40,000 to River Associates under the construction loan. On October 17, 1988 CSB advanced $431,452.90 to River Associates under the construction loan. On December 23, 1988, CSB advanced $190,624.00 to River Associates under the construction loan.
On February 23, 1989, CSB advanced $211,662.00 to River Associates under the construction loan. On April 10, 1989, CSB advanced $238,425.00 to River Associates under the construction loan. On June 13, 1989, CSB advanced $169,174.00 to River Associates.
On July 3, 1989, CSB released its mortgage as to Unit C-1 only. On July 6, 1989, River Associates conveyed Unit C-1 to a third party.
On July 24, 1989, CSB advanced $183,468.00 to River Associates under the construction loan.
On or about August 20, 1989 River Associates advised Red Rooster that, because of the existing economic conditions, River Associates was suspending work on the buildings.
On October 16, 1989, Red Rooster commenced an action to foreclose its lien and named CSB as a party defendant. CSB claims an interest in the Project by virtue of a mortgage recorded on February 4, 1988, more than four months after Red Rooster commenced construction.
As of September 23, 1989 the outstanding balance on Requisitions 9 and 10 was $258,402.36.
Subsequently River Associates made an additional payment of CT Page 5984 $50,000.00 which reduced the unpaid contract balance to $208,402.36. On August 3, 1990, this court, Berdon, J., found there was probable cause to sustain the validity of the lien in the amount of $208,402.36.
Red Rooster is owed $208,402.36 for materials and services rendered in the construction of the Project.
The sole purpose intended by Red Rooster and River Associates for the delivery by Red Rooster of a lien waiver on July 5, 1989 was to release its right to claim a lien on Unit C-1. The lien was dissolved upon the substitution of a bond with CSB as principal and the Connecticut Attorneys' Title Insurance Company ("CATIC") as surety.
The bond provides, in relevant part:
 NOW THEREFORE, if the Principal [CSB] shall pay to the Obligee [Red Rooster] or its assigns such amount as a court of competent jurisdiction may adjudge (i) to have been secured by Obligee's [Red Rooster's] Mechanic's Lien, and (ii) to have been prior in right under the Mechanic's Lien to the interest of the Principal's [CSB's] Mortgage on the Property, together with interest and costs and such attorney's fees as may be awarded by the Court, if any, all such amounts not exceeding, however, the amount of this bond, $325,000., then this bond shall be null and void, otherwise to remain in full force and effect.
The principal issues raised by defendants, CSB and CATIC, fully discussed hereafter, are the following:
(1) Whether the failure of the plaintiff to execute' under oath the mechanic's lien certificate invalidates the lien;
(2) Whether the failure of the plaintiff to serve a true and attested copy of the mechanic's lien certificate upon CSB renders the mechanic's lien invalid;
(3) Whether the failure of the plaintiff to allege and prove the recording and service of a lis pendens within one year following the recording of a mechanic's line invalidates the lien;
(4) Whether the failure of the plaintiff to allocate its charges to each building and the common areas renders the mechanic's lien invalid; CT Page 5985
(5) Whether the plaintiff's claim in quantum meruit is subordinate to the interest of CSB;
(6) Whether the plaintiff waived its rights to file a mechanic's line;
(7) Whether the plaintiff's stipulation that it would not make demand upon CSB on the bond discharged the surety, Connecticut Attorneys Title Insurance Company ("CATIC"), from liability on the bond.
In addition, CSB and CATIC claim that the mechanic's lien statute is unconstitutional.
(1) Whether the failure of the plaintiff to execute under oath the mechanic's lien certificate invalidates the lien.
Pursuant to Conn. Gen. Stat. 49-34 (1)(C) "[a] mechanic's lien is not valid, unless the person performing the services or furnishing the materials. . . lodges with the town clerk. . . a certificate in writing. . . subscribed and sworn to by the claimant." In J. C. Penney Properties, Inc. v. Peter M. Santella Co.,210 Conn. 511 (1989), the court addressed the issue of whether the certificate requires a written recital of the oath-taking on the certificate. The court held that "the oath must appear in writing on the certificate of mechanic's lien for it to be valid under the statute." J. C. Penney Properties, Inc., 210 at 511. The court stated that "[t]o validate a certificate without a written oath would invite confusion, delay and uncertainty into an area where certainty and complete compliance with the statutory requirements are of paramount importance to interested parties and the general public." Id. at 518.
In rendering its decision in J. C. Penny Properties, Inc., the court considered several other cases including Bell Zajicek, Inc. v. Heyward-Robinson Co., 23 Conn. Sup. 296 (1962). In Bell 
Zajicek, the court, relying on the plain meaning of the language of the statute, noted that "[t]he term `sworn to' implies that the subscriber shall have declared upon oath the truth of the statement to which his name is subscribed." Bell Zajicek,23 Conn. Sup. at 299. Thus the court found that a certificate of mechanic's lien that was not sworn to but merely acknowledged was invalid. Id.
In the case at bar, the certificate of mechanic's lien contains a written recital of the oath. However, the testimony indicates that no oath was administered when the mechanic's lien was executed. Because the mechanic's lien certificate was not executed under oath, the lien is invalid. CT Page 5986
(2) Whether the failure of the plaintiff to serve a true and attested copy of the mechanic's lien certificate upon CSB renders the mechanic's lien invalid.
Conn. Gen. Stat. 49-34 provides that a mechanic's lien is not valid unless a true and attested copy of the certificate is served upon the "owner of the building, lot or plot of land in the same manner as is provided for the service of the notice in section 49-35."
Conn. Gen. Stat. 49-34 provides that:
 [n]o person other than the original contractor. . . is entitled to claim any such mechanic's lien, unless, after commencing, and not later than ninety days after ceasing. . . [work], he gives written notice to the owner of the building, lot or plot of land. . . that he. . . intends to claim a lien. . . . The notice shall be served upon the owner. . . When there are two or more owners, . . ., the notice shall be so served on each owner. . . .
The defendants, CSB and CATIC, contend that, because the plaintiff has served only River Associates and Kraus but not CSB, the lien is invalid. The defendants argue that pursuant to Conn. Gen. Stat. 47-36h the mortgage deed from River Associates to CSB has the force and effect of a deed in fee simple, subject to defeasance. Therefore, according to the defendants, CSB as holder of legal title is an "owner" upon whom the plaintiff was required to serve a copy of the mechanic's lien certificate. Failure to do so, the defendants contend, deprived CSB of certain rights pursuant to Conn. Gen. Stat. 49-35a which renders the lien invalid.
The plaintiff counters that no authority can be found to support CSB's contention that a mortgagee is an "owner" within the meaning of Conn. Gen. Stat. 49-34 and 49-135a(a) and was thereby entitled to such notice. The plaintiff argues that notice was served on River Associates on September 28, 1989 in accordance with Conn. Gen. Stat. 49-34 and that River Associates as the sole owner of property filed a motion pursuant to 49-35a for discharge or reduction of the lien. A hearing was held in June, 1990 in which CSB participated but did not claim to be the "owner."
In Papa v. Greenwich Green, Inc., 177 Conn. 295, 300 (1979), the plaintiff argued that the legislature's use of the term "owner" should be limited in scope to the contracting owner with whom the contract was made. The court rejected this argument and broadly construed the term to include the individual owners of CT Page 5987 condominium units who acquired an ownership interest before the recording of the mechanic's lien, as well as the developer. Id. at 303. At the time of conveyance of a condominium unit each owner of a unit, along with the developer, became the owner of an undivided interest in the property on which the plaintiffs sought to impose a lien and eventually to foreclose. Papa,177 Conn. at 302. The court stated that "it logically follows that when an individual's property right might be adversely affected and where he has a constitutional prerogative to a timely hearing, such an individual should be provided with a fair and suitable notice of the recording of a mechanic's lien against that property." Id.
Pursuant to Conn. Gen. Stat. 47-36h,[1] Connecticut follows the title theory in which the mortgagee holds legal title to the mortgaged property while the mortgagor has equitable title called the equity of redemption. Barclays Bank of New York v. Ivler,20 Conn. App. 163, 166 (1989). "The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage, the most important of which is usually the payment of money." Id.
The term "owner" has been variously defined in the statutes although, generally, "owner" in the context of real estate has been defined with reference to title. Warner v. Leslie-Elliott Constructors, Inc., 194 Conn. 129, 137 (1984).
 In the construction of statutes, words and phrases should be construed according to the commonly approved usage of the language. . . . General Statutes 1-1(a). The commonly approved use of the word "owner" indicates "one that owns: one that has the legal or rightful title whether the possessor or not. . . ." Webster, Third New International Dictionary. . . . Indeed, the fact that the legislature so frequently specifically defines "owner" as more encompassing that one who has title suggests the understanding that the word "owner" when not so expanded will be limited to one who has title.
Id.
The purpose of the notice requirement pursuant to Conn. Gen. Stat. 49-34 is to protect the due process rights of property owners who would not otherwise have actual notice of the recorded lien. H S Torrington Associates v. Lutz Engineering Co.,185 Conn. 549, 554 (1981).
The requirement of service of a copy of the certificate upon the owner is a statutory prerequisite to the validity of the CT Page 5988 mechanic's lien pursuant to Conn. Gen. Stat. 49-34. Furthermore, case law defines "owner" to entail the legal titleholder. Therefore, because the court has found that CSB, who holds legal title, was never served with a true and attested copy of the mechanic's lien certificate, the mechanic's lien is invalid on that ground.
(3) Whether the failure of the plaintiff to allege and prove the recording and service of a lis pendens within one year following the recording of a mechanic's lien invalidates the lien.
The defendants, CSB and CATIC, contend that, because Red Rooster has failed to prove the filing of a lis pendens, the mechanic's lien is invalid. Red Rooster counters that no authority can be found to support this argument and, furthermore, that this challenge must be raised by way of a special defense.
Conn. Gen. Stat. 49-39 provides in relevant part that "[a] mechanic's lien shall not continue in force for a longer period than one year after the lien has been perfected, unless the party claiming the lien commences an action to foreclose it. . . and records a notice of lis pendens. . . within one year from the date the lien was recorded. . . ." (emphasis added). No lis pendens was filed within one year after the lien was recorded, based on the evidence presented.
"The purpose of the mechanic's lien is to give one who furnishes materials or services the security of the building and land for payment of his claim by making such claim a lien thereon." H S Torrington Associates v. Lutz Engineering Co.,185 Conn. 549, 553 (1981). As the mechanic's lien is solely a creature of statute, the lienor must comply with statutory requirements. Id. Although the court has endorsed a policy favoring liberal construction of claimed inadequacies in certificates of mechanics' liens in order to achieve the remedial purposes of the statutes, such a policy has limitations. J. C. Penny Properties, Inc. v. Peter M. Santella Co., 210 Conn. 511,514 (1989).
 [T]he principles that guide our interpretation of mechanic's lien legislation are well settled. Although the legislation creates a statutory lien in derogation of the common law. . . its remedial purpose to furnish security for a contractor's labor and materials requires a general construction. . . . Generosity of spirit does not, however, permit departure from reasonable compliance with the specific provisions of the statute. CT Page 5989
Id. (citations omitted).
A split of authority exists in the Superior Court as to whether filing of the lis pendens is mandatory. In Meyer, Kasindorf and Mancino, Architects v. Lafayette Bank and Trust Co.,34 Conn. Sup. 84, 85 (1977), the defendant filed a motion to erase the action for the foreclosure of a mechanic's lien on the ground that the plaintiffs failed to file a lis pendens within one year of the filing of the lien. The court noted that the primary purpose of the lis pendens is "to give constructive notice to persons seeking to purchase or encumber property after the recording of a lien or the commencement of a foreclosure suit." Meyer, 34 Conn. Sup. at 87. The court found that, because the defendant had actual notice of the action, it could not claim any prejudice from the failure to file a notice of lis pendens and "since the requirement is not a condition precedent to the plaintiffs' right of action. . . the plaintiffs' lien is not invalid as to this defendant." Id. The court also noted that failure to file the notice of the lis pendens does not go to the jurisdiction of the court. Id.
On the other hand, in Putnam Plumbing Heating v. Donald W. Hartrick, 1 Conn. L. Rptr. 684, 685 (May 31, 1990, Lewis, J.), the court, citing Kelemen v. Rimrock Corp., 207 Conn. 599, 606 (1988), stated that "where the language used by the legislature is plain and unambiguous, there is no room for statutory construction by the courts and the statute will be applied as its words direct." The use of the words "shall" and "and" in the statute mandates the filing of a notice of a lis pendens and failure to file would invalidate a mechanic's lien. Putnam Plumbing, 1 Conn. L. Rptr. at 685. See also Omnibank of Connecticut, Inc. v. Poplar Condominium Development, Inc. D.N. #256880, J.D. of Fairfield at Bridgeport, Memorandum of Decision on Motion for Discharge of Mechanic's Lien, January 23, 1991, McGrath, J. (mechanic's lien is invalid and discharged as a matter of law as lienor failed to commence action to foreclose the mechanic's lien and failed to record a notice of lis pendens); Forge Square Assoc. Ltd. Partnership v. P M Mason Contractors, Inc., 5 CSCR 146, 147
(February 2, 1990, Higgins, J.) (same); Tomko Electric, Inc. v. Johndrow, 1 Conn. L. Rptr. 734 (June 11, 1990, Kaplan, J.) (mechanic's lien is invalid as lienor failed to record the requisite lis pendens on the land records pursuant to Conn. Gen. Stat. 49-39; Kelly-Fradet Lumber Co., Inc. v. Stomper, 1 CSCR 319
(May 20, 1986, N. O'Neill, J.) (lien is no longer in force as required notice of lis pendens has not been recorded).
In plaintiff's memorandum dated May 21, 1991, the plaintiff argues for the first time that the original lis pendens was filed on the land records on October 16, 1989 and a true attested and certified copy of the original recorded notice of lis pendens was CT Page 5990 served on the defendants, River Associates, Kenneth J. Kraus and CSB, that same day. That submission, however, does not constitute evidence of the filing. The court finds persuasive the reasoning in Putnam Plumbing that the requirement of Conn. Gen. Stat. 49-39
is mandatory, not directory. There is no authority for the proposition that the failure to file must be raised by special defense. Because the plaintiff has not established that the lis pendens was filed within one year after the lien was recorded, the mechanic's lien is invalid and shall be discharged as matter of law. Conn. Gen. Stat. 49-39, 49-40a.
(4) Whether the failure of the plaintiff to allocate its charges to each building and the common areas renders the mechanic's lien invalid.
The defendant, citing Wilcox v. Woodruff, 61 Conn. 578
(1892), argues that, under the "lienable unit test", the plaintiff cannot file the mechanic's lien against the entire parcel of land unless there is a unity of structure. Because the property includes nine buildings which are not dependent or appurtenant to one another, the defendant contends that no unity exists in this case and thus the lien against the entire parcel is invalid. The 1 plaintiff counters that Conn. Gen. Stat. 49-33 was amended in 1974 eliminating the "lienable unit" requirement and, therefore, a blanket lien may be placed on the entire condominium complex.
Prior to the amendment, effective October 21, 1974, Conn. Gen. Stat. 49-33 "made lienable `materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances. . . .' General Statutes 49-33
(Rev. to 1972)." Camputaro v. Stuart Hardwood Corporation,180 Conn. 545, 551 (1980). Cases construing the language of the statute as it then existed "required, as a condition of lienability, that the work done be incorporated in or utilized in the building (or the appurtenance) to be constructed. . . ." Id. "This was the so-called `lienable unit' theory." Pomarico v. Gary Construction, Inc., 5 Conn. App. 106, 109 (1985), cert. denied,197 Conn. 816 (1985).
Conn. Gen. Stat. 49-33 (rev'd to 1991) now extends the mechanic's lien to encompass claims for materials furnished or services rendered "in the improvement of any lot or in the site development or subdivision of any plot of land. . . ." Camputaro,180 Conn. at 553-54; Pomarico, 5 Conn. App. at 109-110. The court in Pomarico, after considering the legislative history, concluded that the amended statute eliminated the "lienable unit" requirement. Pomarico, 5 Conn. App. at 111. The court found that a mechanic's lien that was blanket in form and did not identify the specific work done or materials furnished to any particular house or lot was a valid lien. Id. at 108, 111. CT Page 5991
Because the amended statute and case law interpreting the statute have eliminated the "lienable unit" requirement, the defendant's reliance on this requirement is unavailing. Thus, the mechanic's lien cannot be invalidated on this ground.
(5) Whether the plaintiff's claim in quantum meruit is subordinate to the interest of CSB.
The defendants claim that, although the plaintiff performed work prior to February, 1988, a written contract was never executed by the parties. In fact, a final schedule of values was not in place until March 31, 1988 and no written contract was ever executed although two separate draft contracts were prepared and reviewed by the parties. The defendants contend that, if the plaintiff's claim lies in quasi contract or quantum meruit, the court must find separate and distinct contracts premised upon each requisition, for the contract cannot be imposed until the work has been completed. Because the first eight requisitions have been fully paid by River Associates, the only claim outstanding is for payment of requisitions nine and ten. Thus, the defendants contend that the plaintiff's lien rights, if any, relate back only to the commencement of work covered under requisition nine which could not be earlier than May 17, 1989.
The plaintiff counters that "[i]n light of the fact that CSB provided financing for the construction project in the principal amount of $1.8 million, it is absurd for CSB to suggest that, no contract existed or that Red Rooster was not obligated to continue work on the project as long as it was getting paid for the work being done."
 Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. Rossetti v. New Britain, 161 Conn. 283, 292, 303 A.2d 714 (1972). Such contracts are determined from evidence of the parties' course of conduct which implies a promise to pay for the services rendered. The pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered. Derr v. Moody, 6 Conn. Cir. Ct. 718, 721-22, 261 A.2d 290 (1969). If the allegations do support the theory, then the CT Page 5992 plaintiff was entitled to the charge on quantum meruit for the recovery of the value of the services rendered. Rossetti v. New Britain, supra, 292.
Burns v. Koellmer, 11 Conn. App. 375, 383, 84 (1987). Quantum meruit is utilized when the benefit received was the work, labor or services of the party seeking restitution. Id. at 384. "It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations." Rahmati v. Mehri, 188 Conn. 583, 587 (1982).
The agreement between Red Rooster and River Associates was that Red Rooster, as general contractor, would construct 26 residential condominium units and 4,000 square feet of commercial space on the land owned by the developer, River Associates. Although this agreement was never formalized, the conduct of the parties indicates the existence of this contractual obligation. There is no evidence that the parties renegotiated their agreement before the completion of each phase of the work and the submission of each new invoice. For this reason, the defendants' argument that the court must find separate and distinct contracts and that the plaintiff's lien rights relate back only to May 17, 1989 is without merit.
(6) Whether the plaintiff waived its rights to file a mechanic's lien.
The defendants claim that the series of mechanics' lien waivers executed by the plaintiff waived the plaintiff's right to impose a lien upon the property and that plaintiff knew that CSB would rely upon these documents in advancing funds. The defendants argue that, if any lien rights exist, they relate back only to the date of the last waiver delivered to River Associates (dated July 5, 1988) which is subsequent in time to CSB's interest. Moreover, the defendants contend that the waivers explicitly and unambiguously state that they cover "work done or to be done and materials furnished heretofore and hereafter" and, as such, must be given effect as written. This effect, according to the defendants, is an absolute waiver of plaintiff's rights to lien the premises. Furthermore, if any ambiguity in the language exists, the ambiguity is to be construed most strongly against the party drawing up the document.
Between September 30, 1987 and August 23, 1989, Red Rooster submitted ten requisitions to River Associates. Accompanying requisitions two through six were form lien waivers. The following language was preprinted on these forms: CT Page 5993
 [W]e the undersigned. . . do hereby waive and relinquish, all liens and claims of liens upon a lot of land. . . and upon the buildings now on said land, and also upon the buildings which are now in process of erection on said land, for work done or to be done and materials furnished or to be furnished in the erection construction, or repair of said buildings or any of them. . . It is understood and agreed that any and all signatures hereto are for all services rendered, work performed and materials furnished, heretofore and hereafter. . . .
The plaintiff typed on these forms certain information including specific dates. (See, e.g., Exhibit C, "For work from 4-1-88 thru 6-25-88"). The plaintiff claims that each of these five lien waivers is expressly limited to a fixed period which corresponds to the period covered by the accompanying requisition and that it has not relinquished its rights for the period before April 1, 1988 or after January 28, 1989. Therefore, according to the plaintiff, the mechanic's lien relates back to the ground breaking ceremony in September of 1987 which was prior in time to CSB's mortgage recorded on February 4, 1988.
As to the sixth lien waiver (Exhibit Q) dated July 5, 1989, the sole purpose of the waiver was to release plaintiff's, rights to claim a lien on condominium unit C-1 so that River Associates could convey this unit to a third party.
"[T]he term `waiver of mechanic's lien' has by long usage become descriptive of a writing having the purpose and effect of releasing, according to its terms, the statutory right to a mechanic's lien." Townsend v. Barlow, 101 Conn. 86, 89 (1924); Bialowans v. Minor, 209 Conn. 212, 215-16 (1988).
 Though in terms purporting to affect only the mutual rights of the lienor and owner, it is intended for the information and security of third persons, who may be induced thereby to loan money to the owner of the premises on the lienor's assurance that his statutory incumbrance has been released; and the real consideration which moves the lienor to release his incumbrance is the expectation that his employer will be put in funds out of which he hopes to be paid in whole or in part.
Townsend, 101 Conn. at 89: Bialowans, 209 Conn. at 216. "A waiver of mechanic's lien, having these well-understood implications, and which in terms waives and relinguishes all liens and claims of CT Page 5994 liens which the lienor now has or hereafter may have, possesses a very plain and unmistakable legal significance." Townsend,101 Conn. at 89. The essential nature of the mechanic's lien is that the lien "takes precedence over any other encumbrance originating after the commencement of the services, or the furnishing of any such materials. . . ." Conn. Gen. Stat. 49-33 (b) (rev'd to 1991).
Ordinarily, whether the plaintiff has waived its right to a mechanic's lien is a question of fact. Pomarico,5 Conn. App. at 112. However, if the contract language is clear and definite, the scope and meaning of that language is not a question of fact but a question of law. Pero Building Co. v. Smith, 6 Conn. App. 180,184 (1986), appeal after remand, 16 Conn. App. 71 (1988).
In determining the effect of the waiver, it is necessary to consider the words used by the party to express its intent in light of the purpose for which the waiver was given. See Weinberg v. Valente, 79 Conn. 247, 249 (1906); Hillhouse v. Duca, 101 Conn. 92,102 (1924); In Townsend v. Barlow, 101 Conn. 86, 89 (1924), the plaintiffs claimed that the written waiver of lien on its face waived only the plaintiffs' right of lien for "work done" and did not operate as a relinquishment of the right for work to be done. The waiver of lien stated that the subscribers "have waived and relinquished and do hereby waive and relinquish all liens and claims of liens we now have or hereafter may have." Townsend,101 Conn. at 87. The court, citing Hillhouse, noted that "the plain and unmistakable terms of the writing could not be varied by construction so as to import an exception into a general release of lien." Id. at 90. The plaintiffs' claim for construction of the waiver, besides contradicting the plain meaning of the words, also conflicted with the general purpose of the waiver which was to insure priority of the temporary mortgage loan. Id. at 91.
The court noted that if the waiver was not construed as a release of the lien in respect of all labor and materials thereafter to be furnished under the contract, a release by a lienor whose contract is not fully performed at the date of the writing will not serve its intended purpose of giving priority to the prospective mortgagee as the lien will relate back to the time when performance was commenced. Id. at 90. Thus, the court found that the writing on its face was an absolute and unconditional release of the plaintiffs' statutory lien. Id. at 92.
In the instant case, qualifying language has been inserted on the preprinted form which the plaintiff contends limits the scope of the waiver of its rights. "Since parties generally do not insert meaningless provisions in their agreements, every provision must be given effect if reasonably possible." Albert Mendel 
Son, Inc. v. Krogh, 4 Conn. App. 117, 123 (1985). CT Page 5995
 "Further, `[w]here there is a printed form of contract, and other words are inserted [in the printed form], in writing or otherwise, it is to be assumed that they take precedence over the printed matter."'
A. Dubreuil Sons, Inc. v. Lisbon, 215 Conn. 604, 612 (1990).
A general rule of contact construction is that
 [t]he interpretation of a contract involves a search for the intent of the parties. Where this intent is expressed in language that is clear and unambiguous, the contract is to be given effect according to its terms. Also, a contract is to be construed as a whole and all relevant provisions will be considered together.
Bialowans, 209 Conn. at 217 (citations omitted). However, where ambiguity exists and the plaintiff is the party who has drafted the waiver, the terms should be construed in favor of, the defendant. Weinberg, 79 Conn. at 250.
The court must look to the language of the waiver as well as the purpose behind its execution.
Because the court has found that the document drafted by the plaintiffs clearly indicated that the lien rights were being waived only as to work performed as of the date of execution of the waiver and that the defendants did not rely on the waiver when advancing the funds, the court concludes that the plaintiff limited the waiver to the dates specified and that the lien relates back to the date when the work was commenced which is prior in time to the recording of the mortgage by CSB.
(7) Whether the plaintiff's stipulation that it would not make demand upon CSB on the bond discharged the surety, Connecticut Attorneys Title Insurance Company ("CATIC"), from liability on the bond.
The defendants, CSB and CATIC, argue that, because the plaintiff stipulated on the record that it would not seek to recover from CSB on the bond if it was successful, but would limit recovery to a demand on CATIC on the bond, this unconditionally released the principal and thereby discharged the surety. The plaintiff asserts that the bond does not require that Red Rooster seek recovery from CSB before any recovery may be sought from CATIC. Also, the plaintiff argues that Red Rooster's agreement provides for a future discharge of CSB conditioned upon payment by CATIC and that CSB would still be obligated on the bond if CATIC CT Page 5996 refuses to pay.
Conn. Gen. Stat. 49-37 (a) allows an owner of the real estate or any person interested in it to dissolve the mechanic's lien by the substitution of a bond with surety. "[T]he legislative intent in enacting 49-37 (a) was to enable the owner or any person `interested' in the property to obtain a dissolution of the mechanic's lien so long as the lienor's rights are not prejudiced in doing so." Henry F. Raab Connecticut, Inc. v. J. W. Fisher Co., 183 Conn. 108, 115 (1981). While the provisions of the statute "are designed to facilitate the transfer of the property by dissolution of the lien, they are also intended to ensure the continued existence of assets out of which the lienor may satisfy his claim if he should later prevail and obtain a judgment on the merits of the mechanic's lien." Id. at 115-16.
In State ex rel McClure v. Northrop, 93 Conn. 558, 565
(1919), the court considered the issue of whether an agreement to release the principal discharged the sureties on the bond. The court noted that "[a]n unqualified release of a principal debtor will discharge the surety." Id. at 566. Furthermore, "[t]o effect the discharge the release must be unconditional and upon good consideration." Id.
In the case at bar, Red Rooster stipulated that, if successful, it would not seek to recover from CSB on the bond, but would limit recovery to a demand on CATIC. The stipulation to release CSB on the bond did not discharge the surety as there was no consideration for the agreement and the release was not unqualified, but was conditioned upon payment by CATIC.
Because the decision of the court on the foregoing issues has resolved this action, it is not necessary for the court to address the claim of unconstitutionality raised by CSB and CATIC.
For the foregoing reasons, the court concludes that the mechanic's lien of Red Rooster is invalid. Accordingly, the lien is discharged and judgment may enter for the defendants.
BARRY R. SCHALLER, Judge
Footnote